IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CONNIE L. MOREY                                                                    PLAINTIFF

VS.                                    CIVIL NO. 04-5243

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                       DEFENDANT

**MEMORANDUM OPINION**

Connie Morey ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration terminating her disability insurance benefits ("DIB").

**Background:**

The application for DIB now before this court was filed on July 17, 2002, alleging an onset date of January 1, 1999, due to chronic obstructive pulmonary disease ("COPD"), emphysema, asthma, right tennis elbow post surgery, knot on the left knee, left golfer's elbow, fatigue, anxiety, and depression. (Tr. 19, 73, 95, 98, 101). An administrative hearing was held on July 17, 2003. (Tr. 294-335). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was forty-eight years old and possessed ninth grade education. (Tr. 17, 56, 300, 302-306). The record reflects that she has past relevant work experience ("PRW") as a retail store manager and sitter/companion. (Tr. 303-306).

On December 11, 2003, the Administrative Law Judge (hereinafter "ALJ"), issued a written opinion finding that, although severe, plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 24). After

AO72A
(Rev. 8/82)

determining that plaintiff's subjective allegations were not totally credible, he concluded that plaintiff maintained the residual functional capacity ("RFC") to perform light work with no more than occasional stooping, crouching, kneeling, crawling, use of ladders, exposure to temperature extremes, or overhead reaching. (Tr. 23). With the assistance of a vocational expert, the ALJ found that plaintiff could return to her past relevant work. (Tr. 25).

On December 22, 2003, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the

ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

**Evidence Presented:**

Plaintiff initially saw Dr. Christopher S. Johnson at Mercy-Rogers Medical Center in Rogers on March 30,1998, for complaints of cough and congestion. Following an examination, he diagnosed her with bronchitis, noting that she was a chronic cigarette smoker. (Tr. 160, 277). For this, he prescribed an Albuterol nebulizer, Prednisone, Biaxin, and Ventolin. (Tr. 160, 277).

Plaintiff was seen by Megan von Gremp, a nurse, at Mercy-Rogers Medical Center on November 3, 1998, for complaints of congestion and productive cough. In concert with Dr. Hugh Donnell, Ms. von Gremp diagnosed plaintiff with left otitis media and tobacco abuse. (Tr. 159, 276). As such, plaintiff was treated via Augmentin, PanMist LA, Auralgan, Zyban, and Tylenol and instructed to return to the clinic if she did not improve. (Tr. 159, 276).

On March 16, 1999, an acute abdominal series revealed no acute intra-thoracic process. (Tr. 108). Further, plaintiff was noted to have a negative abdominal examination. (Tr. 108).

On November 17, 1999, plaintiff presented with complaints of cough, congestion, and wheezing. (Tr. 157). A pulmonary examination was remarkable for occasional expiratory wheezing. Dr. Johnson reiterated his diagnosis of bronchitis and tobacco abuse. He then treated plaintiff via a nebulizer treatment at the clinic and prescribed Biaxin, Prednisone, and Combivent. (Tr. 157).

Plaintiff was again treated by Dr. Johnson on May 12, 2000, for complaints of a sore throat. (Tr. 154). He noted that she had been suffering from a cough, congestion, as well as a low grade fever. After diagnosing her with pharyngitis, Dr. Johnson prescribed a Z-Pak and Diflucan, and instructed her to gargle with salt water. (Tr. 154).

AO72A
(Rev. 8/82)

Dr. Lisa K. Low treated plaintiff at Mercy-Rogers Medical Center on August 4, 2000, for increasing dyspnea. (Tr. 151). She had reportedly finished a recent round of Zithromax, without improvement. Plaintiff stated that she had experienced some fever, chills, and wheezing. Following an examination, Dr. Low diagnosed plaintiff with asthma/probable chronic obstructive pulmonary disease and acute bronchitis. (Tr. 151). She prescribed an Albuterol nebulizer and Prednisone, ordered a chest x-ray, and instructed a follow-up with Dr. Johnson in one week or sooner, if her condition worsened. (Tr. 151). Records indicate that her chest x-ray revealed no active cardiopulmonary process. (Tr. 152).

On November 7, 2000, plaintiff again reported dyspnea, stating that it was worsened over the last several days. (Tr. 146). Dr. Low diagnosed her with COPD; dyspnea, probably secondary to the COPD; and, hyperventilation. (Tr. 146). She noted that plaintiff's chest x-ray showed a very small, left-sided pleural thickening or pleural effusion" and that there was evidence of emphysema. (Tr. 146). Therefore, plaintiff was prescribed Albuterol nebulizer treatments, Combivent, Doxycycline, and Wellbutrin. (Tr. 146). Dr. Low planned a follow-up in four weeks with a spirometry. (Tr. 146).

A chest x-ray dated November 7, 2000, revealed no evidence of acute cardiopulmonary disease. (Tr. 147). However, the radiologist did note that plaintiff's lungs remain hyperinflated and the diaphragm was bilaterally flattened, suggesting emphysematous change. (Tr. 147).

Plaintiff had a follow-up appointment with Dr. Low on November 24, 2000. (Tr. 144, 272). Following an exam, Dr. Low diagnosed her with dyspnea and wheezing, most likely secondary to asthmatic bronchitis or possibly even mild COPD. (Tr. 144, 272).Pulmonary

5

function tests were ordered, and plaintiff was directed to continue using inhalers on an as needed basis. Overall Dr. Low indicated that plaintiff was much improved, as she had reportedly quit smoking two weeks prior to her appointment. Records indicate that plaintiff was very committed to abstinence from cigarettes. However, because plaintiff had gained some weight since quitting smoking, she was given diet information and recommended a low fat, lower calorie diet. To aid her in losing weight, Dr. Low prescribed a trial of Meridia. In addition, the doctor noted that plaintiff had shown improvement after taking Wellbutrin for about a week and a half. (Tr. 144, 272).

On December 5, 2000, after reviewing plaintiff's spirometry results, Dr. Low diagnosed her with mild COPD and encouraged her to remain abstinent from cigarettes. (Tr. 141). She indicated that plaintiff may require repeated spirometry testing in about a year. Further, she directed plaintiff to follow-up with her if she developed any wheezing or an increased cough. Dr. Low advised plaintiff to continue taking the Meridia to counter the weight gain caused by her smoking cessation. She also directed plaintiff to perform neck stretches to relieve her trapezius spasm. (Tr. 141).

On February 26, 2001, after diagnosing plaintiff with acute bronchitis, Dr. Johnson noted that plaintiff was probably in the early stages of COPD. (Tr. 139). As such, he prescribed Biaxin XL and Pancof HC, and directed plaintiff to continue using her Combivent inhaler. (Tr. 139). On March 26, 2001, Dr. Johnson again diagnosed plaintiff with COPD and prescribed Avelox and a Medrol Dosepak. (Tr. 137). He then reiterated this assessment in a follow-up report dated July 20, 2001, after again treating plaintiff for symptoms to include cough,

6

congestion, fever, and shortness of breath. (Tr. 133).

On August 9, 2001, Dr. Johnson assessed plaintiff with depression, noting that she had been raped approximately twenty years ago and reported symptoms that sounded like post-traumatic stress disorder. (Tr. 131). For this, he prescribed Celexa. (Tr. 131).

Progress notes dated September 24, 2001, from Dr. Scott Bailey of Parkhill Clinic For Women, reveal that plaintiff was suffering from some left-sided lower back pain that was reportedly debilitating. (Tr. 227). She also reported urinary incontinence. An examination revealed a large cystocele and rectocele with poor urethral vesicle angle support that felt like an enterocele at the apex of the vagina. After diagnosing plaintiff with "lumbar sacral strain", she was prescribed Flexeril, Mepargan, and Detrol LA. He also recommended urodynamic testing. (Tr. 227).

Plaintiff was treated by Dr. Timothy Yawn on May 17, 2002, for complaints of cough, sore throat, sinus trouble, chest pain, and bronchitis. (Tr. 111). After assessing plaintiff, he noted rhonchi in her lungs and diagnosed her with acute bronchitis. (Tr. 111). For this, Dr. Yawn prescribed Proventil, Zithromax, Phenergan DM, and a Medrol Dosepak. He also instructed plaintiff to increase her fluid intake and follow-up with his office if symptoms worsened. (Tr. 111, 112).

On June 11, 2002, plaintiff again voiced complaints of shortness of breath, stating that her symptoms had begun subsequent to the prescription of Zoloft for depression. (Tr. 124, 264). Dr. Johnson noted that a recent chest x-ray showed evidence of COPD. (Tr. 125). He also stated that he did not think that plaintiff's shortness of breath was related to her taking Zoloft. (Tr.

AO 72A
(Rev. 8/82)

124, 264). Dr. Johnson found this to be more of a coincidence. (Tr. 124, 264). However, he decided to switch plaintiff to Celexa, begin her on an Advair inhaler, and continue her on Albuterol. (Tr. 124, 264).

On September 17, 2002, Dr. Gary L. Templeton performed pulmonary function tests on plaintiff. (Tr. 115). He determined that she was suffering from severe obstructive lung disease with a reactive airway component. (Tr. 115).

Dr. Robert M. Redd performed an RFC assessment of plaintiff on September 17, 2002. After reviewing her medical records, Dr. Redd determined that she could occasionally lift and/or carry twenty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk about six hours in an eight-hour workday; and, sit for about six hours during an eight-hour workday. (Tr. 175). He did not find any postural, manipulative, visual, communicative or environmental limitations. (Tr. 176-178). However, Dr. Redd did conclude that plaintiff's symptoms were attributable to a medically determinable impairment. (Tr. 179).

On October 6, 2002, plaintiff was admitted to Bates Medical Center in Bentonville, Arkansas, due to fever and a cough. (Tr. 164-173). She was noted to be experiencing trouble breathing, wheezing, and chest tightness. (Tr. 167). However, a chest x-ray revealed no acute process. (Tr. 170). At the time of discharge, she was instructed to stop smoking, continue her Albuterol, and drink at least sixty-four ounces of water per day. Further, plaintiff was given a prescription for Zithromax. (Tr. 169).

On October 9, 2002 plaintiff again complained of a cough and asthma. (Tr. 254, 255). Dr. Yawn diagnosed her with asthma, acute bronchitis, and nicotine dependence. For this, he

8

AO72A
(Rev. 8/82)

administered a Combivent updraft treatment, prescribed Decadron and Augmentin, and instructed her to increase her fluid intake and continue her prescribed medications. Dr. Yawn also urged her to quit smoking. (Tr. 255).

Dr. Shannon Wipf saw plaintiff on October 11, 2002, on behalf of Dr. Yawn, who was unavailable at that time. Following an examination, plaintiff was diagnosed with acute bronchitis, acute COPD, diarrhea, abdominal cramping, hemorrhoids, and hematochezia. (Tr. 252, 253, 258, 259). Dr. Wipf prescribed Colace, Prednisone, and Ceftin and planned a follow-up if symptoms worsened. (Tr. 253, 258).

Six days later, on October 17, 2002, Dr. Yawn treated plaintiff for asthma and bronchitis (Tr. 248-249). He again recommended smoking cessation, increased fluid intake, and continuing her prescribed medications. (Tr. 249, 251).

On November 5, 2002 and December 31, 2002, plaintiff consulted with Devsaw Young, a psychologist. (Tr. 260). In a letter dated June 30, 2003, Dr. Young reported that plaintiff scored in marked range on the Zung Depression Inventory screening . (Tr. 260). She added that plaintiff presented with depression and grief, warranting a diagnoses of moderate and recurrent major depression and post traumatic stress disorder. Dr. Young noted that plaintiff was upset "that the emphysema had curtailed even minor chores and the gardening she loved." (Tr. 260).

On November 14, 2002, plaintiff returned to Dr. Yawn's office for a follow-up. (Tr. 247). After diagnosing her with asthma, depression, and nicotine dependence, he increased her dosages of Advair and Celexa. (Tr. 247). Again, Dr. Yawn advised plaintiff to increase her fluid intake, stop smoking, and continue taking her medications as prescribed. (Tr. 247).

9

On December 12, 2002, plaintiff underwent pulmonary function studies. (Tr. 244). Dr. Yawn noted that her test results were consistent with obstructive airway disease. (Tr. 245). Further, he diagnosed her with asthma, nicotine dependence, and depression. He then reiterated his previous directive to continue her medications and quit smoking. (Tr. 244, 245).

On January 17, 2003, plaintiff was diagnosed with left otitis media, acute sinusitis, and depression. (Tr. 241-243). Dr. Yawn recommended increased fluid intake, prescribed Augmentin, increased plaintiff's Wellbutrin dosage, discontinued the Celexa, and began plaintiff on Zoloft. (Tr. 242, 243). On January 21, 2003, Dr. Yawn reiterated his previous diagnoses, adding a diagnosis of asthma. (Tr. 239, 240). At that time, he prescribed DepoMedrol and had plaintiff discontinue her Zoloft for a couple of days. (Tr. 240).

Dr. Yawn next saw plaintiff on February 13, 2003, at which time she was noted to be suffering from acute bronchitis and hemoptysis.[1] (Tr. 237, 238). She reported a cough, runny nose, ear pain, fever, and chest pain. (Tr. 237). For this, he prescribed Zithromax and Pancof-XP and recommended increased fluid intake, as well as Tylenol, Advil, or Motrin for fever and pain. (Tr. 238). He continued plaintiff's medications and instructed her to notify him if her condition worsened or if she was not better in five to seven days. (Tr. 238).

Plaintiff was next seen on April 4, 2003, with complaints of allergic rhinitis, hay fever, acute bronchitis, asthma, and depression. (Tr. 262). Dr. Yawn reiterated his recommendation for increased fluid intake and Tylenol, Advil, or Motrin for pain. (Tr. 262). He also prescribed

---

[1]Hemoptysis is defined as coughing up blood. (Tr. 237, 238).

AO72A
(Rev. 8/82)

Depo-Medrol, continued plaintiff's medications, and instructed her to return if problems developed or worsened. (Tr. 262, 263). On June 4, 2003, he then diagnosed her with dyspnea, asthma, and left medial epicondylitis. (Tr. 236).

In a progress note dated June 16, 2003, plaintiff complained of lower back pain. (Tr. 261). As such, Dr. Yawn diagnosed her with left sacroilitis and COPD. (Tr. 261). At this time, he prescribed Ultram for pain and gave her samples of Bextra. (Tr. 261).

On July 21, 2003, Dr. Yawn completed a medical source statement. (Tr. 11-13, 289-291). He noted that plaintiff's ability to lift and carry was affected by her impairment. Further, Dr. Yawn opined that plaintiff could only occasionally lift ten pounds and frequently lift less than ten pounds due to dyspnea, restrictive/obstructive airway disease and left medial epicondylitis pain. (Tr. 11, 289). He also indicated that plaintiff's ability to stand and walk was affected by her impairment and stated that she could stand and/or walk less than two hours in an eight hour workday due to COPD and dyspnea. (Tr. 11, 289). Dr. Yawn opined that her ability to sit was not affected by her impairment, but that her ability to push and pull was limited due to left medial epicondylitis pain. (Tr. 12, 290). In addition, he concluded that plaintiff could never climb or crouch and only occasionally balance, kneel or crawl. (Tr. 12, 290). He further determined that her ability to reach, handle, and finger objects was limited due to her left medial elbow pain. (Tr. 13, 291). Dr. Yawn noted that plaintiff's ability to speak was limited by her dyspnea, and that temperature extremes, dust, humidity/wetness, fumes, odors, chemicals and gasses would all exacerbate her dyspnea and COPD. (Tr. 13, 291). Finally, Dr. Yawn cited spirometry tests, pulmonary consultations and evaluations, tenderness of the left medial

11

epicondyle and pain with an active range of motion of the left elbow to support his conclusions. (Tr. 12, 290).

In a letter dated July 23, 2003, Dr. Yawn stated that plaintiff had been treated for a number of different medical problems, but in particular, she had experienced great difficulty with shortness of breath, which was secondary to obstructive/restrictive lung disease. (Tr. 10). He also indicated that plaintiff had significant problems with left elbow pain secondary to left medial epicondylitis. Because of these medical problems, as well as the problems with depression and anxiety for which she was receiving treatment via medication, he did not believe that she would be able to hold down a job "in a day-in and day-out fashion." (Tr. 10, 288). However, Dr. Yawn stressed that the primary cause of plaintiff's physical limitations and restrictions was her severe obstructive/restrictive lung disease. Pulmonary function tests conducted on June 4, 2003, revealed that her best forced expiratory volume in one second was only 1.14.liters, which was only forty-five percent of her expected value. Her best forced vital capacity was also markedly limited ,with a measurement of 2.34 liters, which was only seventy-eight percent of her predicted volume. Based on these results, in combination with the aforementioned medical assessments, Dr. Yawn concluded that plaintiff would be unable to hold down a job at a performance level that would be required by an employer. (Tr. 10, 288).

**Discussion:**

Of particular concern to the undersigned is the ALJ's improper dismissal of the RFC assessment prepared by Dr. Yawn, plaintiff's treating physician. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is

AO72A
(Rev. 8/82)

generally entitled to substantial weight). While we are cognizant of the fact that a treating physician's opinion may be dismissed when other medical assessments are supported by better or more thorough medical evidence or the treating physician renders inconsistent opinions that undermine the credibility of his or her opinion, we do not find that situation to exist in the current case. *See Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000); *Rogers v. Chater,* 118 F.3d 600, 602 (8th Cir. 1997); *Cruze v. Chater,* 85 F.3d 1320, 1324-25 (8th Cir. 1996). As detailed above, the objective medical evidence clearly indicates that plaintiff has repeatedly sought treatment for asthma, acute bronchitis, and dyspnea since at least March 1998. (Tr. 160). Further, chest x-rays and spirometry results have revealed that plaintiff suffers from emphysema and COPD. (Tr. 115, 125, 139, 141, 146, 147, 244). Given the fact that she has experienced multiple episodes of bronchitis and dyspnea, which have required treatment via antibiotics, steroids, updraft treatments, and inhalers, we believe that the ALJ should have afforded Dr. Yawn's opinion more weight than was given. While we do not necessarily agree with the doctor's conclusion that plaintiff is totally unable to perform any work-related activities, we do believe that the evidence indicates that her impairments could be more limiting than those contained in the ALJ's RFC assessment. Therefore, we believe remand is necessary to allow for the proper evaluation of Dr. Yawns' assessment.

On remand, the ALJ is directed to reconsider the medical evidence, including Dr. Yawn's RFC assessment. If he again determines that Dr. Yawn's opinion should not be awarded controlling weight, he is directed to provide specific reasons for that decision. Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the

13

ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R § 404.1527(d)(2); *see also* SSR 96-2p; *Prosch v. Apfel,* 201 F.3d at 1010, 1012-13 (8th Cir. 2000).

Further, as the plaintiff has also been treated by several other physicians during the relevant time period, it might be helpful to the ALJ to have those physicians complete RFC assessments. Thus, on remand, it is suggested that he address interrogatories to the other physicians who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records and complete a RFC assessment regarding plaintiff's capabilities during the time period in question. They should then be asked to provide an objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). With this evidence, the ALJ should then re-evaluate plaintiff's RFC and specifically list in a hypothetical question to a vocational expert any limitations that are indicated in the RFC assessments and supported by substantial evidence.

**Conclusion:**

Based on the foregoing, we reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this the 29th day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)